IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CRYSTAL LYNN ROBINSON,**

        **Plaintiff,**

  vs.                                              Civil Action 2:14-cv-1682
                                                        Judge Sargus
                                                         Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

**REPORT AND RECOMMENDATION**

      This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is now before the Court for consideration of *Plaintiff's Statement of Errors and Memorandum in Support* ("*Statement of Errors*"), Doc. No. 13, and *Defendant's Memorandum in Opposition* ("*Commissioner's Response*"), Doc. No. 16.

**I.    Background**

      Plaintiff Crystal Lynn Robinson filed her current application for supplemental security income on December 13, 2012, and her current application for a period of disability and disability insurance benefits on February 14, 2013, alleging that she has been disabled since November 1, 1994. *PAGEID* 66, 234-37.[1] The claims were denied

---

[1] Plaintiff's prior applications for benefits - filed in 2003, 2004, 2006, 2007, 2009, and 2010 - were denied. *PAGEID* 66.

initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on March 12, 2014, at which plaintiff, represented by counsel, appeared and testified, as did John Finch, Ph.D, who testified as a vocational expert, and Heather Price, LSW LCDC III, plaintiff's mental health counselor who also testified as a witness. *PAGEID* 66, 85. In a decision dated April 2, 2014, the administrative law judge concluded that plaintiff was not disabled from November 1, 1994, through the date of the administrative decision. *PAGEID* 66-79. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 24, 2014. *PAGEID* 51-53.

Plaintiff was 31 years of age on the date of the administrative decision. *See PAGEID* 79, 234. Plaintiff is insured for disability insurance purposes through December 31, 2017. *PAGEID* 68. Plaintiff has a limited education, is able to communicate in English, and has past relevant work as a babysitter/child monitor. *PAGEID* 77. The administrative law judge found that plaintiff engaged in substantial gainful activity as a self-employed babysitter for friends in 2008-2012. *PAGEID* 68.

**II. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of seizure disorder, alcohol abuse disorder, borderline intelligence, and affective and anxiety-related disorders.

*PAGEID* 69. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform a full range of work at all exertional levels, subject to no climbing of ladders, ropes, or scaffolds. She is able to work in work environments where she can avoid use of moving or hazardous machinery and unprotected heights. She would be off task up to five percent of the workday. She can perform simple, routine, repetitive tasks in a low stress job defined as requiring only occasional decisionmaking [sic] and occasional changes in the work setting. She requires goal-based production/work measured by end result, not pace work.

*PAGEID* 70-72. Although this RFC would preclude plaintiff's past relevant work as a babysitter/child monitor, the administrative law judge relied on the testimony of the vocational expert to find that plaintiff is nevertheless able to perform a significant number of jobs in the national economy, including such representative jobs as order picker, laundry worker, and janitor. *PAGEID* 77-78. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from November 1, 1994, through the date of the administrative decision. *PAGEID* 79.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence

3

as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff argues that the administrative law judge erred in evaluating the opinion of treating psychiatrist Paraja Thakuria, M.D., and Ms. Price. *Statement of Errors*, pp. 5-15. Plaintiff specifically argues that the administrative law judge violated the treating physician rule when evaluating Dr. Thakuria's opinion by failing to evaluate the appropriate factors and by failing to provide "good reasons" for discounting her opinion. *Id*. at pp. 9. Plaintiff also argues that the administrative law judge failed to evaluate the appropriate factors when evaluating Ms. Price's opinion and failed to specify the weight given to Ms. Price's hearing testimony. *Id*. at pp. 16-17.

4

Plaintiff was brought to Twin Valley Behavioral Healthcare by her friends in an effort to prevent her from committing suicide by overdose. *PAGEID* 536. She reported prior "heavy use of crack cocaine since 13, but none since April of 2012," drinking up to one liter of liquor daily, and daily use of opiate pills. *Id*. She was "in relapse prevention for cocaine and benzos, early persuasion for alcohol, marijuana, opiates, and her mental illness." *Id*. Plaintiff "stabiliz[ed] quite well" with medication, became calmer and developed improved insight and judgment. *PAGEID* 536. She was diagnosed with alcohol intoxication, substance-induced mood disorder, polysubstance dependence, and antisocial personality disorder. *PAGEID* 537.

Plaintiff began treating at Columbus Area, Inc., on June 14, 2013, following her discharge from Twin Valley Behavioral Healthcare. *PAGEID* 537-40. Dr. Thakuria first saw plaintiff at Columbus Area, Inc., on August 29, 2013. *PAGEID* 581. Dr. Thakuria noted plaintiff's history of depression and polysubstance abuse and a prior diagnosis of PTSD. *Id*. Dr. Thakuria saw plaintiff again on September 18, October 7, and October 25, 2013. *PAGEID* 578-80. Ms. Price counseled plaintiff at Columbus Area, Inc., approximately once every two weeks from August 2013 through March 2014. *PAGEID* 587-614.

Dr. Thakuria and Ms. Price completed an assessment of plaintiff in March 2014; Ms. Price signed the assessment on March 10, 2014, and Dr. Thakuria signed the assessment on March 11, 2014. *PAGEID* 583-85. Dr. Thakuria and Ms. Price diagnosed plaintiff with "Mood disorder NOS, PTSD, Generalized Anxiety D/O, Panic Attacks, Seizure Disorder,

5

[and] Migraine headaches." *PAGEID* 583.  Dr. Thakuria and Ms. Price noted that they had personally observed "depressed mood, irritability, anger outburst, mood swings, difficulty concentrating, hyper vigilance, excessive worry, flashbacks, difficulty sleeping, [and] blunted affect." *Id*.  They described plaintiff's cognitive status as follows: "Client reports persistent concentration and attention issues resulting in great difficulty finishing what she starts.  Client becomes easily distressed and is triggered by outside events.  Client reports marked limitations with household chores and leisure activities[;] cannot watch T.V. for more than 10 minutes, etc. due to inattention." *Id*.  Dr. Thakuria and Ms. Price described plaintiff's problems with social interactions as follows:

> Client experiences symptoms of anxiety, such as shortness of breath, rapid heartbeat, sweating, abdominal distress while riding the bus, waiting in the lobby, or being around others she is not familiar with.  Client avoids situations where she has to meet new people, if she must do community activity, she does so accompanied by case manager or family member.

*Id*.  Dr. Thakuria and Ms. Price described plaintiff's ability to tolerate stress as follows: "Client will typically avoid stressors, if unavoidable, she may become agitated, verbally hostile, or physically abusive." *Id*.  They also checked boxes indicating that plaintiff has marked limitations in her ability to (1) understand, remember, and carry out short and simple instructions, (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (3) maintain an ordinary routine without special supervision, (4) work in coordination with or proximity to others

6

without being distracted by them, (5) complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (6) accept instructions and respond appropriately to criticism from supervisors, and (7) get along with coworkers and peers without distracting them or exhibiting behavioral extremes. *PAGEID* 584.

Ms. Price testified at the March 12, 2014 administrative hearing that she had met with plaintiff for one to one and one-half hours once every two weeks since July 2013. *PAGEID* 97-104. During that time, plaintiff "never presented as being under the influence." *PAGEID* 98. Ms. Price testified that she and Dr. Thakuria spent 30 to 45 minutes filling out the March 2014 assessment. Ms. Price also noted that she witnessed plaintiff "trying to be away from people" in the waiting room, appearing uncomfortable, and having outbursts where her voice was raised and rapid. *PAGEID* 100-02. Ms. Price testified that plaintiff's outbursts distract other people and last between 10 and 15 minutes. *PAGEID* 100-01.

As a licensed social worker, Ms. Price is categorized as an "other source," rather than an "acceptable medical source." 20 C.F.R. §§ 404.1513(d)(3); 416.913(d)(3). Administrative law judges have the "discretion to determine the proper weight to accord opinions from 'other sources.'" *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997)). Evidence from other sources may be

7

considered "to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work."  20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1).  Among the factors to be considered in evaluating the opinions of these "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, whether the source has a special expertise, and any other factor supporting or refuting the opinion.  SSR 06-03p, 2006 WL 2329939, at *4-5 (Aug. 9, 2006).  An administrative law judge need not weigh all the factors in every case; the evaluation depends on the particular facts in each case.  *See id*. at *5.  However, the administrative law judge "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning."  *Id*. at *6.

Dr. Thakuria is an "acceptable medical source," and she is classified as a treating provider.  The opinion of a treating provider must be given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).  Even if the opinion of a treating provider is not entitled to controlling weight, an administrative law judge is nevertheless required to evaluate the opinion by considering such factors as the length, nature

8

and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Moreover, an administrative law judge must provide "good reasons" for discounting the opinion of a treating provider, *i.e.*, reasons that are "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996)).  This special treatment afforded the opinions of treating providers recognizes that

> "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).

The administrative law judge considered Ms. Price's testimony and her and Dr. Thakuria's March 2014 assessment of plaintiff as follows:

> Heather Price, the claimant's mental health counselor, testified that she saw the claimant every two weeks and that she had not seen evidence of current substance abuse. Ms. Price indicated that the claimant isolated herself and sometimes had outbursts that lasted ten to fifteen minutes. Ms. Price indicated that the claimant required reminders

9

> and that she never came to treatment alone. Ms. Price said that she had never witnessed a seizure.
>
> . . .
>
> In March 2014, Paraja Thakuria, M.D., and Ms. Price indicated that the claimant had marked mental work-related limitations (Exhibit 11F). Dr. Thakuria opined that stressors could make the claimant agitated, verbally hostile or physically aggressive (Exhibit 11F at 2). Remarkably, the opinion made no mention of polysubstance abuse, despite the evidence of a substantial history of polyubstance abuse. Similarly, Ms. Price testified that she was unaware of the claimant's marijuana use despite it being documented in the treatment record.
>
> Indeed, the claimant's mental health treatment has been sporadic and associated with polysubstance abuse (Exhibits 1F-4F and 7F-12F). In June 2013, she was admitted for treatment of alcohol intoxication, substance-induced mood disorder, polysubstance dependence, and antisocial personality disorder, and she reported that she had consumed a fifth of a liter of liquor a day and had for years (Exhibit 7F at 1). She was much improved and calmer after about a week of sobriety and being put on medications (Exhibit 7F at 2). She reported that she last used crack cocaine in April 2012 (Exhibit 7F at 2), and she reported taking Percocet daily. She reported occasional marijuana abuse (Exhibit 8F at 7). Karen Sue Nadolson, M.D., commented that the claimant's "[p]rognosis is fair if she stays on her medications and keeps her appointments; guarded if she does not" (Exhibit 7F at 3). Furthermore, as summarized below, the claimant has engaged in significant activities of living, including substantial gainful activity as a babysitter for the years 2008 through 2012, despite substantial polysubstance abuse. Accordingly, I give little weight to the assessment of Dr. Thakuria and Ms. Price.

*PAGEID* 72, 74-75 (alteration in original).

The administrative law judge did not err in evaluating Dr. Thakuria's and Ms. Price's assessment. The administrative law judge discounted the assessment because it "made no mention of polysubstance abuse, despite the evidence of a substantial history of polysubstance abuse;" Ms. Price was "unaware of the claimant's marijuana use despite

10

it being documented in the treatment record;" and plaintiff "has engaged in significant activities of living, including substantial gainful activity as a babysitter for the years 2008 through 2012, despite substantial polysubstance abuse." *PAGEID* 74-75.  The administrative law judge noted that plaintiff's mental health treatment had been sporadic and associated with polysubstance abuse and that plaintiff was "much improved and calmer" in June 2013 after a week of sobriety and medication.  *Id*.  The administrative law judge was sufficiently specific as to the weight given to Dr. Thakuria's and Ms. Price's assessment and the reasons for assigning that weight.  Under the circumstances, a formulaic recitation of factors is not required.  *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

   Plaintiff argues that it was error to discount Dr. Thakuria's and Ms. Price's assessment merely because that assessment did not mention polysubstance abuse in light of the fact that plaintiff's polysubstance abuse pre-dated her treatment with Dr. Thakuria and Ms. Price and "had no reasonable bearing on their current evaluation of Plaintiff's level of functioning during an extended period of sobriety."  *Statement of Errors*, pp. 10-11.  Plaintiff also represents that she sporadically sought mental health treatment and had substantial gainful employment as a babysitter during periods of

11

polysubstance abuse that predated her treatment with Dr.Thakuria and Ms. Price. *Id*. at pp. 11-15. The Court finds no error on the part of the administrative law judge in this regard. It was not improper for the administrative law judge to discount Dr. Thakuria's and Ms. Price's assessment because they "made no mention of polysubstance abuse, despite the evidence of a substantial history of polysubstance abuse." *PAGEID* 74. The administrative law judge noted the extensive evidence of polysubstance abuse and, as the Commissioner argues, "Plaintiff's overdose and nine night stay at Twin Valley was the very reason she was referred to Ms. Price and Dr. Thakuria in the first place." *Commissioner's Response*, p. 10. *See also PAGEID* 535-40, 557-72. Moreover, Dr. Thakuria noted a history of polysubstance abuse or diagnosed plaintiff with polysubstance abuse every time she saw plaintiff and, on October 25, 2013, Dr. Thakuria noted that plaintiff was "Drug Seeking." *PAGEID* 578 (emphasis in original). It was therefore not improper to discount Dr. Thakuria's and Ms. Price's assessment on the basis that it failed to mention plaintiff's polysubstance abuse.

It was also not improper for the administrative law judge to characterize Dr. Thakuria's and Ms. Price's assessment as inconsistent with plaintiff's activities of daily living. Plaintiff does not dispute that she engaged in "substantial gainful activity as a babysitter for the years 2008 through 2012, despite substantial polysubstance abuse," *PAGEID* 75, and, as noted by the administrative law judge, plaintiff showed improvement after a week of sobriety and

12

prescribed medication.  *See PAGEID* 75, 536-37.  The administrative law judge also noted that, in January and February 2014, plaintiff reported caring for her boyfriend, who had health problems, and "running around with her mother for much of the last month, as her mother had been diagnosed with stage 4 lung cancer."  PAGEID 76-77.  These findings are supported by substantial evidence.  *See PAGEID* 589, 591.

    Plaintiff next argues that the administrative law judge erred in "fail[ing] to specify what weight was given to Ms. Price's hearing testimony and opinion."  *Statement of Errors*, p. 16.  The administrative law judge summarized Ms. Price's March 12, 2014 hearing testimony and evaluated her March 10, 2014 assessment, but assigned it "little weight."  PAGEID 74-75.  It is true that the administrative law judge did not specify the weight assigned to Ms. Price's testimony.  However, Ms. Price did not offer, during the course of her testimony, an opinion about how plaintiff's impairments affect her ability to work.  *See* 20 C.F.R. §§ 404.1513(d); 416.913(d).  Even assuming that she did, Ms. Price merely reiterated the findings contained in her March 2014 assessment.  The administrative law judge assigned little weight to that assessment, and it is clear that he considered and discounted her hearing testimony for the same reasons.  Accordingly, the Court finds that the administrative law judge did not err in evaluating Ms. Price's hearing testimony.

    Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported

13

by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which

fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


April 28, 2015                               *s/Norah McCann King*
                                          Norah M<sup>c</sup>Cann King
                                     United States Magistrate Judge