UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CRYSTAL LYNN ROBINSON,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

Case No. 2:14-cv-1682
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on Plaintiff Crystal Lynn Robinson's ("Plaintiff") Objections [ECF No. 18] to the Magistrate Judge's April 28, 2015 Report and Recommendation [ECF No. 17]. For the following reasons, the Court **SUSTAINS** Plaintiff's Objections [ECF No. 18] and **REMANDS** the case to the Commissioner of Social Security (the "Commissioner") and the Administrative Law Judge ("ALJ") for further proceedings consistent with this Order.

### I.    BACKGROUND

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on February 14, 2013. (Certified Administrative Record ("R.") at 181 [ECF Nos. 10 through 10-8].) Plaintiff's claims were denied on initial consideration and on reconsideration. (*Id.* at 71, 83, 101, 116, 119, 122, 130, 134, 137, 140.) Plaintiff then presented her claims to an ALJ. The ALJ denied Plaintiff's claims on April 2, 2014. (*Id.* at 13.) Plaintiff filed a request for review before the Appeals Council; her appeal was denied and the ALJ's decision became the Commissioner's final decision. (*Id.* at 1.)

Plaintiff initiated her action in this Court on September 22, 2014. (*See generally* Mot. for Leave to Proceed *in forma pauperis* [ECF No. 1].) In her Statement of Specific Errors (the

"Statement of Errors") [ECF No. 13], Plaintiff contended that the ALJ erred by discounting the March 11, 2014 Assessment (the "March 11 Assessment") of treating psychiatrist Paraja Thakuria, M.D. ("Dr. Thakuria") and social worker Ms. Heather Price ("Ms. Price"). (Statement of Errors at 5–15.) Plaintiff argued that the ALJ violated the treating source rule by failing to evaluate the appropriate factors and by failing to provide "good reasons" for discounting the March 11 Assessment. (*Id.* at 9.) Plaintiff also alleged that the ALJ erred in failing to properly weigh Ms. Price's hearing testimony. (*Id.* at 16–17.)

On April 28, 2015, the Magistrate Judge issued her Report and Recommendation in support of the Commissioner's decision denying Plaintiff's claims. (*See* Report & Recommendation at 13–14 [ECF No. 17].) The Magistrate Judge concluded that the ALJ did not err in evaluating the March 11 Assessment. (*Id.* at 10.) The Magistrate judge explained that the ALJ "was sufficiently specific as to the weight given to [the March 11 Assessment] and the reasons for assigning that weight":

> The [ALJ] discounted the assessment because it "made no mention of polysubstance abuse, despite the evidence of a substantial history of polysubstance abuse;" Ms. Price was "unaware of the claimant's marijuana use despite it being documented in the treatment record;" and plaintiff "has engaged in significant activities of living, including substantial gainful activity as a babysitter for the years 2008 through 2012, despite substantial polysubstance abuse."

(*Id.* at 10–11.) The Magistrate Judge concluded that these reasons were supported by substantial evidence. (*See id.* at 12–14.) With respect to Ms. Price's hearing testimony, the Magistrate Judge again concluded that the ALJ did not err. (*Id.* at 13.)

Plaintiff objects to the Magistrate Judge's conclusion regarding the March 11 Assessment. (*See* Objections at 2 [ECF No. 18].)[1] Plaintiff contends that the ALJ did not provide

---

[1] Plaintiff does not specifically object to the Magistrate Judge's conclusion regarding Ms. Price's hearing testimony. As such, the Court will not address that issue. *See Dixon v. Moore*, No. 3:04-cv-00308, 2010

2

good reasons to disregard Dr. Thakuria and Ms. Price's treating source opinion because each of the reasons given by the ALJ "([i.e.,] history of polysubstance abuse, sporadic mental health treatment, and significant activities of daily living) occurred prior to the onset of Plaintiff's treatment relationship with the [t]reating sources who provided the opinion at issue." (*Id.*)

## II. LEGAL STANDARDS

The Court reviews objections to a Report and Recommendation by making "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). Nevertheless, "if substantial

---

WL 2303269, at *1 (S.D. Ohio May 21, 2010) (explaining that a party waives further review of an issue if the party fails to specifically raise the issue in its objections to a Report and Recommendation (citing *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990))).

3

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

ALJs must consider all medical opinions that they receive when evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

4

If the ALJ does not afford controlling weight to a treating source's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s] [a] treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

### III. ANALYSIS

#### A. The Treating Source Rule

Here, the ALJ did not consider the proper factors when he determined the weight that Dr. Thakuria and Ms. Price's March 11 Assessment (a treating source's opinion) would receive. Nor did the ALJ otherwise provide "good reasons" for his decision. By disregarding these procedural requirements, the ALJ erred.

As an initial matter, the Commissioner insists that the March 11 Assessment does not constitute a treating source opinion because Ms. Price, rather than Dr. Thakuria, "filled in the assessment form." (*See* Resp. to Objections at 6 [ECF No. 19].) The Court disagrees. The Commissioner cites Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2 (July 2, 1996), for the proposition that an ALJ is not permitted to assign controlling weight "to the portion of the assessment the case manager or social worker completed." (Resp. to Objections at 6.) But SSR 96-2p stands for no such proposition. The Ruling simply indicates that an opinion "must be a 'medical opinion'" and that it "must come from a 'treating source,' as defined in 20 CFR 404.1502 and 416.902." SSR 96-2p, at *2. The Ruling does not distinguish between opinions filled out and signed by a treating psychiatrist and opinions filled out by a social worker and then signed—and thus adopted—by a treating psychiatrist. *See id.* The March 11 Assessment is a treating source opinion.

In assigning "little weight" to the March 11 Assessment, the ALJ offered the following explanation:

> In March 2014, Paraja Thakuria, M.D., and Ms. Price indicated that the claimant had marked mental work-related limitations (Exhibit 11F). Dr. Thakuria opined that stressors could make the claimant agitated, verbally hostile or physically aggressive (Exhibit 11F at 2). Remarkably, the opinion made no mention of polysubstance abuse, despite the evidence of a substantial history of

> polysubstance abuse. Similarly, Ms. Price testified that she was unaware of the claimant's marijuana use despite it being documented in the treatment record.
>
> Indeed, the claimant's mental health treatment has been sporadic and associated with polysubstance abuse (Exhibits 1F-4F and 7F-12F). In June 2013, she was admitted for treatment of alcohol intoxication, substance-induced mood disorder, polysubstance dependence, and antisocial personality disorder, and she reported that she had consumed a fifth of a liter of liquor a day and had for years (Exhibit 7F at 1). She was much improved and calmer after about a week of sobriety and being put on medications (Exhibit 7F at 2). She reported that she last used crack cocaine in April 2012 (Exhibit 7F at 2), and she reported taking Percocet daily. She reported occasional marijuana abuse (Exhibit 8F at 7). Karen Sue Nadolson, M.D., commented that the claimant's "[p]rognosis is fair if she stays on her medications and keeps her appointments; guarded if she does not" (Exhibit 7F at 3). Furthermore, as summarized below, the claimant has engaged in significant activities of living, including substantial gainful activity as a babysitter for the years 2008 through 2012, despite substantial polysubstance abuse. Accordingly, I give little weight to the assessment of Dr. Thakuria and Ms. Price.

(R. at 24–25.)

In his discussion of the March 11 Assessment, the ALJ did not analyze (i) the length of Dr. Thakuria and Ms. Price's treatment relationship with Plaintiff, (ii) the frequency of Dr. Thakuria and Ms. Price's examinations, (iii) the nature and extent of the treatment relationship, or (iv) Dr. Thakuria and Ms. Price's areas of specialty. (*See id.*) An ALJ must consider these factors when determining the weight given to a treating source's opinion. *See* 20 C.F.R. § 416.927(c)(2). The consideration of these factors is not an empty formality. *See Wilson*, 378 F.3d at 546 (A reviewing court "cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely."). Failure to consider these factors "'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified upon the record.'" *Friend*, 375 F. App'x at 551 (quoting *Rogers*, 486 F.3d at 243).

7

The ALJ's discussion indirectly considered the supportability and consistency of the March 11 Assessment.[2] (*See* R. at 24–25.) But the ALJ's reasoning lacks sufficient specificity to comply with the "good reason" requirement. *See* 20 C.F.R. § 416.927(c)(2); *Friend*, 375 F. App'x at 550 (noting that an ALJ's reasoning must be "sufficiently specific" as to the weight given to a treating source's medical opinion and the reasons for that weight (citing SSR 96-2p, at *5)).[3]

The ALJ, for example, does not explain why the March 11 Assessment should carry less weight for failing to mention polysubstance abuse. *See Puckett v. Comm'r of Soc. Sec.*, No. 1:10-cv-528, 2011 WL 4366665, at *4 (S.D. Ohio Sept. 19, 2011) (holding that the ALJ erred in relying "'on 2006 evidence of substance abuse as a basis for discrediting[,] [for inconsistency reasons, treating source opinions from 2008]'" (quoting *Puckett v. Comm'r of Soc. Sec.*, No. 1:10-cv-528, 2011 WL 4368368, at *12 (S.D. Ohio Aug. 11, 2011))). The record indicates that Plaintiff has a history of polysubstance abuse. (*See, e.g.*, R. at 479–80.) But the ALJ does not offer any citations to the record suggesting that Plaintiff engaged in this behavior from July 2013 through March 2014—while Dr. Thakuria and Ms. Price were treating Plaintiff. (*Cf. id.* at 48 (Ms. Price stated at the hearing that "[s]ince [she] started working with [Plaintiff], she has not had any indication or suspicion that [Plaintiff has] been using substances."); *id.* at 520 (Dr.

---

[2] To determine the supportability of an opinion, an ALJ considers the amount of relevant evidence that a medical source provides in support of her opinion, "particularly medical signs and laboratory findings." *See* 20 C.F.R. § 416.927(c)(3). As to consistency, "[g]enerally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 416.927(c)(4).

[3] Several of the ALJ's reasons for discounting the March 11 Assessment reference Plaintiff's polysubstance abuse. As the Court explains in Section III.B below, to the extent that the ALJ discusses polysubstance abuse to argue that Dr. Thakuria and Ms. Price would not have found that Plaintiff suffers marked work-related limitations if they had considered Plaintiff's polysubstance abuse, the ALJ erred. The current Section analyzes the ALJ's other purposes for referencing polysubstance abuse: highlighting alleged inconsistencies in the record and attacking the assessment's supportability.

Padma Tandon made no references to current substance abuse in notes dated December 23, 2013.).)[4]

The ALJ next points out that Plaintiff's "mental health treatment has been sporadic and associated with polysubstance abuse." (R. at 24.) But again, the ALJ does not articulate why Plaintiff's purportedly sporadic mental health treatment represents an inconsistency or a limitation on the supportability of the March 11 Assessment. In fact, the record does not show sporadic mental health treatment by Dr. Thakuria and Ms. Price. The record indicates that Plaintiff saw Dr. Thakuria and Ms. Price regularly. (*See* R. at 48 (Ms. Price testified that she met with Plaintiff "[b]etween an hour and an hour and a half every two weeks."); *id.* at 527 (The March 11 Assessment stated that Plaintiff was "seen monthly" from July 2013 through March 2014.); *see also id.* at 522–25, 531–54 (examination notes).) Perhaps the ALJ's reference to sporadic treatment relates to the mental health treatment that Plaintiff received prior to working with Dr. Thakuria and Ms. Price. But the fact that Plaintiff may have obtained sporadic mental health treatment *prior* to receiving treatment from Dr. Thakuria and Ms. Price does not explain the ALJ's decision to assign less than controlling weight to the March 11 Assessment.

The ALJ describes an apparent discrepancy between the March 11 Assessment and Plaintiff's "substantial gainful activity as a babysitter for the years 2008 through 2012." (R. at 25.) But again, the ALJ does not explain why Dr. Thakuria and Ms. Price should have considered activities that Plaintiff engaged in months, or even years, before the start of the treatment

---

[4] The ALJ also notes that "Ms. Price testified that she was unaware of the claimant's marijuana use despite it being documented in the treatment record." (R. at 24.) But again, the record indicates that Plaintiff no longer used marijuana while she was being treated by Ms. Price. (*See, e.g., id.* at 48, 520.) And the ALJ does not cite any evidence to the contrary. (*See id.* at 24.)

Also, from what the Court can discern of Dr. Thakuria's October 25, 2013 notes, the notes appear to describe Plaintiff as "<u>Drug Seeking</u>." (*Id.* at 522.) But Dr. Thakuria's notes do not indicate that Plaintiff sought drugs for recreational use. Rather, the notes state that Plaintiff was "<u>Drug Seeking</u> for Anxiety." (*Id.*) The notes then discuss seizures. (*Id.*) Read in context, the reference likely refers to Plaintiff's efforts to obtain medicine for legitimate purposes, such as treating her seizures and anxiety.

relationship. Plaintiff's mental and physical health did not remain static between 2008 and 2013. (*See, e.g., id.* at 391, 394, 479, 520.) Plaintiff's husband was beaten to death in front of her in January 2012. (*Id.* at 479, 520.) And in December 2012, for example, Plaintiff suffered a seizure and struck her head against the end of a computer table. (*Id.* at 391.) That December, she also began suffering from headaches and dizziness. (*Id.* at 394.) Plaintiff's condition continued to change from July 2013 through March 2014. (*See id.* at 483, 520–25, 531–54.) Considering the various traumatic events and mental health crises that Plaintiff experienced between 2008 and March 2014, the ALJ did not explain with sufficient specificity why Plaintiff's ability to work from 2008 through 2012 represents an inconsistency with Plaintiff's ability to work as of March 2014, when Dr. Thakuria and Ms. Price completed their assessment.

The ALJ's references to Plaintiff's August 2013 and January 2014 daily activities also lack a specific connection to Plaintiff's ability to work as of March 2014. The ALJ noted that Plaintiff "talked with her friend, swam, watched television, washed dishes, did her laundry, and retired to bed between 11:00 P.M. and midnight" in August 2013. (R. at 26.) The ALJ then observed that Plaintiff was caring for her boyfriend and mother in January 2014. (*Id.* at 27.) That Plaintiff could wash dishes, swim, care for her mother, or engage in other physical activities does not appear to contradict Dr. Thakuria and Ms. Price's assessment. The March 11 Assessment does not address Plaintiff's physical capabilities. Rather, as the assessment clarifies, Plaintiff's *psychological* conditions prevent her from working. (*See id.* at 527–28.)

In its Response to Plaintiff's Objections, the Commissioner offers several other explanations of how the ALJ's discussion specifically relates to, and undermines the weight that should be accorded, the March 11 Assessment. (*See generally* Resp. to Objections.) But the ALJ never offered the explanations that the Commissioner now asserts. And as this Court has held,

10

the Commissioner's post hoc explanations cannot cure an ALJ's failure to adhere to the procedural requirements of the treating source rule. *See Barker v. Comm'r of Soc. Sec.*, No. 3:07-cv-174, 2008 WL 4444739, at *10 (S.D. Ohio Sept. 29, 2008) (finding that "post-hoc rationalizations are especially impotent of persuasive force in overcoming the ALJ's failure to provide good explanations for rejecting the opinions provided by Plaintiff's long-term treating physician"); *see also Wilson*, 378 F.3d at 546. As such, the Court need not, and does not, address the Commissioner's various post hoc explanations.

Strict compliance with the treating source rule's good reason requirement may sometimes be excused. *Wilson*, 378 F.3d at 547. A violation of the good reason requirement might be harmless error if (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it," (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion," or (3) "the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* With respect to the last exception, the treating source rule's procedural protections "may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 F. App'x at 551 (emphasis deleted). None of these circumstances exist here. The procedural error in this case was not harmless.

The March 11 Assessment is not patently deficient. Dr. Thakuria and Ms. Price arrived at their opinion regarding Plaintiff's condition after regularly meeting with Plaintiff for over eight (8) months. (*See* R. at 48, 522–25, 527, 531–54.) And, in fact, neither the Commissioner nor the ALJ has ever asserted that the March 11 Assessment is so deficient that the Commissioner could

not possibly credit it. (*See* R. at 16–29; *see generally* Resp. to Objections.) The ALJ assigned "little weight"—not no weight—to the assessment. (R. at 25.) As to the second exception, the Commissioner did not adopt the March 11 Assessment or make similar findings. (*See id.* at 16–29.) Finally, although the ALJ does attempt to indirectly attack the consistency and supportability of the March 11 Assessment, the ALJ's explanations, as discussed above and in the following Section, are not sufficient to otherwise meet the goals of the good reason requirement.

In sum, the ALJ did not consider the proper factors when he determined the weight that Dr. Thakuria and Ms. Price's March 11 Assessment would receive. The ALJ provided several reasons for his decision, but those reasons lack sufficient specificity to comply with the good reason requirement. This was not a harmless error.

**B.  The Consideration of Plaintiff's Polysubstance Abuse**

The ALJ also erred by discounting the March 11 Assessment for its failure to consider the effect of Plaintiff's polysubstance abuse on her disability. An "ALJ must not factor evidence of substance abuse into the disability determination during the sequential evaluation, but instead . . . '[t]he ALJ must base this disability determination on substantial evidence of [the claimant's] limitations without deductions for the assumed effects of substance use disorders.'" *Hensley v. Comm'r of Soc. Sec.*, No. 1:12-cv-653, 2013 WL 4258852, at *6 (S.D. Ohio Aug. 15, 2013) (quoting *Brueggermann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003)).[5] An ALJ errs if he improperly considers a claimant's substance abuse when assessing weight to treating source opinions. *Id.* at *7. An ALJ should (i) evaluate treating source opinions "without considering the impact of [the claimant's] substance abuse [on the disability, and then (ii) proceed] to the

---

[5] "[T]he ALJ [must] *first* determine whether a claimant suffers from a disability before proceeding—if necessary—to a determination of whether . . . substance abuse is a 'contributing factor material to the determination of disability.' 20 C.F.R. §§ 404.1535, 416.935." *Hensley*, 2013 WL 4258852, at *5.

12

[material factor] analysis under §§ 404.1535 and 416.935, if necessary." *Id.* Even if a claimant does eventually have the burden of proving that substance abuse is not a material factor to her disability, that burden does not create a requirement that the claimant's treating sources discuss substance abuse in their opinions. *See id.* (By giving "'little weight' to the opinion of plaintiff's treating psychiatrist . . . in part because . . . [the treating psychiatrist] did not address plaintiff's substance abuse," the ALJ erred.).

The ALJ's discussion of the March 11 Assessment, although somewhat unclear, appears to reference Plaintiff's history of polysubstance abuse for at least three reasons: (1) to highlight purported inconsistencies in the record (e.g., Ms. Price allegedly failed to notice Plaintiff's marijuana use "despite it being documented in the record."); (2) to undermine the supportability of the March 11 Assessment (e.g., the potential implication that Dr. Thakuria and Ms. Price did not discuss Plaintiff's polysubstance abuse because they had no knowledge of it); and (3) to argue that Dr. Thakuria and Ms. Price would not have found that Plaintiff suffers marked work-related limitations if they had considered Plaintiff's polysubstance abuse (e.g., "[Plaintiff] was much improved and calmer after about a week of sobriety and being put on medications."). (*See* R. at 24–25.) To the extent that the ALJ discounted the March 11 Assessment based on the third reason, the ALJ erred. *See Hensley*, 2013 WL 4258852, at *5–8; *see also* 20 C.F.R. §§ 404.1535 and 416.935. The ALJ should have determined whether Plaintiff is disabled without evaluating the impact of polysubstance abuse on Plaintiff's condition. *See Hensley*, 2013 WL 4258852, at *5–8. Only after completing the sequential evaluation and determining that Plaintiff is disabled should the ALJ have evaluated whether Plaintiff's polysubstance abuse is a material factor to Plaintiff's disability. *See id.*

13

## IV. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS** Plaintiff's Objections [ECF No. 18] to the Report and Recommendation insofar as they relate to the ALJ's weighing of the March 11 Assessment. This case is **REMANDED** to the Commissioner and the ALJ for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

\_\_9-30-2015\_\_
**DATE**

_____
**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**